206 So.2d 200 (1968)
Henry BUCKLEW
v.
STATE of Mississippi.
No. 44616.
Supreme Court of Mississippi.
January 22, 1968.
*201 Quitman Ross, Laurel, for appellant.
Joe T. Patterson, Atty. Gen., by Guy N. Rogers, Asst. Atty. Gen., Jackson, for appellee.
RODGERS, Justice:
This is an appeal from a judgment of conviction of attempted embezzlement from the Circuit Court of Jones County, Mississippi, wherein the mayor of the City of Laurel was fined in the amount of $816.05. The testimony in this case shows that sometime in the summer of 1965 Henry Bucklew, the mayor of Laurel, Mississippi, called a representative of Kelly-Lowe Dodge, Inc., an automobile repair shop, advised them that he had a jeep which belonged to the Pest Control Department of the City of Laurel, and asked whether or not they could repair it. Kelly-Lowe Dodge, Inc. repaired the jeep and purchased tires and chains for it. The repair bill, including labor and parts, amounted to $816.05.
Kelly-Lowe submitted its bill by mail to the City of Laurel about November 25, 1965. When the clerk saw the bill he recognized that it was not an obligation of the City and took it to the mayor. The mayor advised the clerk that he would "take care of it." Some time later, John Jacobs, who was in charge of what is known as the Pest Control Department of the City of Laurel, was requested by the mayor to sign the bill which had been submitted by Kelly-Lowe. In the meantime, the city clerk had requested a copy of this bill from the repair shop "for the files" of the City of Laurel. Later, the mayor was indicted by the grand jury of Jones County for the crime of an attempt to commit embezzlement. The bill for repairs to the jeep was never finally submitted to the City for payment by the mayor or anyone else. The testimony shows that the city clerk had an understanding with the mayor and city commissioners that before bills could be paid by the City it was necessary for the heads of the various departments to approve the payment before they were submitted to the clerk for payment. Thereafter, the mayor or commissioner to whom the bill had been referred would indicate his approval of the bill by signing his name to the approval sheet attached to the bill. The city clerk would then prepare a check in payment of the amount indicated and return it to the mayor for his signature. Before the check could be cashed it required the signature of the clerk. In the absence of the mayor it was necessary for one of the commissioners to sign checks with the clerk before they could be paid.
The testimony showing the approval of Mr. Jacobs by affixing his signature on the bill is the only testimony showing the intention of the mayor after the bill had been turned over to him by the clerk, except that an auditor testified that the mayor told him that he approved the bill by mistake. The original bill was not offered in evidence.
The defendant, Henry Bucklew, was indicted under section 2122, Mississippi Code 1942 Annotated (1956).
When the State had concluded its testimony, the defendant made a motion to exclude the evidence offered on behalf of the State and requested the court to direct the jury to find the defendant not guilty, for the reason that the State had not shown that the defendant had committed an overt act toward the commission of the crime of embezzlement as charged in the indictment. The court overruled this motion and defendant rested his case, without introducing *202 testimony in his behalf and without having testified in his own defense. The issue is, therefore, clearly defined: Did the State show that the defendant committed an overt act in an attempt to commit the crime of embezzlement?
Under the general law it has been pointed out that an attempt to commit a crime consists of three elements: (1) an intent to commit a particular crime; (2) a direct ineffectual act done toward its commission; and (3) the failure to consummate its commission. 22 C.J.S. Criminal Law § 75(1) (1961). Our statutory law requires proof of an overt act in order to sustain a conviction of an attempt to commit a crime.
The pertinent part of section 2017, Mississippi Code 1942 Annotated (1956) is as follows:
"Every person who shall design and endeavor to commit an offense, and shall do any overt act toward the commission thereof, but shall fail therein, or shall be prevented from committing the same, on conviction thereof, * * *."
This Court is in accord with the general law as to the essential elements of the crime of "attempt to commit a crime." We have held that the law requires that the State establish criminal intent as an element to the crime of attempt "to commit a crime." Miller v. State, 130 Miss. 730, 95 So. 83 (1922); Cunningham v. State, 49 Miss. 685 (1874); Stapleton v. State, 130 Miss. 737, 95 So. 86 (1922); Jones v. State, 172 Miss. 597, 161 So. 143 (1935); Bullock v. State, 195 Miss. 340, 15 So.2d 285 (1943); McGuire v. State, 231 Miss. 375, 95 So.2d 537 (1957); Prisock v. State, 244 Miss. 408, 141 So.2d 711 (1962).
We have also held that there must be an overt act done toward the commission of the crime in order to establish the crime of "attempt to commit a crime." Cunningham v. State, supra; Stokes v. States, 92 Miss. 415, 46 So. 627 (1908); Dill v. State, 149 Miss. 167, 115 So. 203 (1928); State v. Lindsey, 202 Miss. 896, 32 So.2d 876 (1947); State v. Wade, 102 Miss. 711, 59 So. 880 (1912); State v. Fitzgerald, 151 Miss. 229, 117 So. 517 (1928).
We have no trouble with the third element, since the Legislature has provided for this element by enactment of section 2018, Mississippi Code 1942 Annotated (1956). This law prevents prosecution for the "attempt to commit an offense, when it shall appear that the crime intended or the offense attempted was perpetrated * * *."
We have held that the mere intention to commit a crime is not punishable. Dill v. State, supra. The intention must therefore be coupled with an overt act. But, what is meant by the requirement that the State prove "an overt act"? The textwriters point out in 22 C.J.S. Criminal Law § 75(2) (1961) at 232 that:
"In a considerable number of cases it has been said that the act must be such as will apparently result, in the usual and natural course of events if not hindered by extraneous causes, in the commission of the crime itself, and an act apparently adapted to produce the intended result is sufficient to constitute the overt act essential to an attempt."
It is said by the textwriter of 1 Wharton, Criminal Law and Procedure § 74 (1957):
"To constitute an attempt, there must be an act directed to the commission of an intended crime, which act goes beyond mere preparation and is apparently suited for the intended purpose, although it may be any act in the series of acts which would ordinarily result in the commission of the crime, and need not be the last or final step in the sequence. Whether an act has passed beyond the stage of preparation and constitutes an attempt is a question of degree.
* * * * * *
"It is also variously stated that an attempt is a direct movement toward the *203 commission of the crime after the preparations have been made; that the defendant's act must be a direct, unequivocal act toward the commission of the intended crime; that his acts must have progressed to the extent of giving him power to commit the offense and nothing but an interruption prevented the commission of the offense; that the defendant's act must reach far enough toward the accomplishment of his intention to commit the offense to amount to a commencement of the consummation or to be a step in the direct movement toward its commission; and that some appreciable fragment of the crime must be committed so that the crime would be completed if the defendant were not interrupted."
See also 14 Am.Jur. Criminal Law §§ 65, 68 (1938).
In Williams v. State, 209 Miss. 902, 48 So.2d 598 (1950), the defendant was convicted of attempting to commit larceny by the "pigeon dropping" game. The Court there said:
"The necessary elements of an attempt are the intent to commit, and the overt act toward its commission. * * * The rule is well recognized that `whenever the design of a person to commit crime is clearly shown, slight acts done in furtherance of this design will constitute an attempt.'" Id. at 909, 48 So.2d at 599-600.
In that case, however, the testimony showed that the various acts of preparation had been concluded and that the defendant then went to the place to receive the money. This Court held that this was a sufficient overt act to establish an attempt.
In the case of Stokes v. State, 92 Miss. 415, 46 So. 627 (1908), this Court pointed out that where one attempted to procure another to kill a third party, and in furtherance of his design took a gun, loaded it and went with the party to a point where the killing was to occur, but was arrested, his act was sufficient to establish an attempt to commit a crime.
The records in the foregoing cases indicate that the defendants had reached a point in the proceedings to commit a crime beyond mere preparation, so that they had actually begun to commit the alleged crime. In Williams the defendant had done everything necessary to commit a crime except receive the money, and in Stokes the defendant had performed his part in the crime of murder and there was nothing left for him to do in furtherance of the crime.
In State v. Lindsey, 202 Miss. 896, 32 So.2d 876 (1947), this Court held that stalking, chasing and running after the prosecuting witness, in a lonesome and secluded place in the country was not a sufficient overt act on which to base a charge of attempt to "forcibly ravish her." In that case we said:
"The gravamen of the offense of an attempt to commit a crime is fixed by the statutory requirement that the defendant must do an overt act toward the commission thereof and be prevented from its consummation." Id. at 899, 32 So.2d at 877.
It is contended by the State in the instant case that the appellant, defendant in the court below, accomplished the required overt act by having the department head of the Pest Control Department sign the bill submitted by Kelly-Lowe Dodge, Inc. An examination of the testimony in this case, however, shows that if all the State attempted to prove was true, the acts done by the defendant were mere acts in preparation to the submission of the bill to the clerk for payment. The testimony shows that it was necessary for the mayor to sign the bill before submitting it to the clerk for payment, and the proof shows that the mayor did not submit the bill to the clerk for payment. Moreover, there is nothing in the record to show that there was any extraneous cause that prevented the mayor from attempting to collect the amount due to the automobile company. Moreover, the record shows that the mayor told the auditor *204 that the bill had been signed through a mistake. Therefore, if the mayor had intended to defraud the City, the record shows that he had abandoned his purpose before attempting to collect the funds from the city treasury.
In 22 C.J.S. Criminal Law § 76 (1961) it is said:
"Abandonment is a defense if the attempt to commit a crime is freely and voluntarily abandoned before the act is put in process of final execution, if there is no outside cause prompting the abandonment. On the other hand, a voluntary abandonment of an attempt which has proceeded beyond mere preparation will not bar a conviction for the attempt."
From the foregoing facts, and our study of the law in this case, we have come to the conclusion that the proof here shown does not sustain the charge of "an attempt to embezzle" funds from the City of Laurel by the appellant.
We pause to point out that the law, like religion, holds out a promise to those who would commit crime and sin that if they voluntarily resist temptation so as to recant and desist before attempting to carry into effect their evil purpose, they will not be held accountable for mere evil intent. On the other hand, facts such as we have in this case prove the rule that those in high places should not only avoid wrongdoing, but should avoid the appearance of evil, because, although the law will not punish for mere evil intent, public opinion will convict and will certainly condemn.
Inasmuch as the law does not punish for the mere appearance of evil, we conclude that the testimony in this case does not establish an attempt to commit a crime, for the reason that it does not show an overt act on the part of the appellant to commit the crime charged, before it is shown that he abandoned his alleged purpose. We are, therefore, constrained to hold that the judgment of the trial court must be reversed, and the appellant, Henry Bucklew, discharged.
Judgment reversed and appellant discharged.
ETHRIDGE, C.J., and JONES, INZER and SMITH, JJ., concur.